# EXHIBIT A

1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - CIVIL
HUDSON COUNTY
DOCKET NO.:  HUD-L-2449-24

CITY OF JERSEY CITY AND CITY OF      )
JERSEY CITY RENT LEVELING BOARD,     )    TRANSCRIPT OF
                                     )       ORDER TO
              Plaintiffs,            )    SHOW CAUSE
                                     )
      -v-                            )
                                     )
THE TOWERS AT PORTSIDE URBAN         )
RENEWAL COMPANY, LLC, EQUITY         )
RESIDENTIAL MANAGEMENT, LLC, ABC     )
CORP. 1-10 (FICTITIOUS ENTITIES)     )
AND JOHN DOES 1-10 (FICTITIOUS       )
NAMES)                               )
              Defendants.            )


                    Place:  W.J. Brennan Courthouse
                            583 Newark Avenue
                            Jersey City, New Jersey  07306
                     Date:  July 11, 2024


B E F O R E:

      THE HONORABLE JEFFREY R. JABLONSKI, J.S.C.


TRANSCRIPT ORDERED BY:

      HARRISON G. STOKES, ESQ. (Ehrlich, Petriello,
Gudin, Plaza & Reed, PC)


A P P E A R A N C E S:

      BRITTANY MURRAY, ESQ. (Acting Corporation Counsel)
      For the Plaintiffs


      DEREK D. REED, ESQ. (Ehrlich, Petriello, Gudin,
      Plaza & Reed, PC)
      Attorney for the Defendants

2

APPEARANCES CONTINUED


    TERRIE L. MASCHERIN, ESQ, AND ANDREW W. VAIL, ESQ.
    (Jenner & Block)
    Attorneys for the Defendants.

    MOLLIE HARTMAN LUSTIG, ESQ. (McLaughlin & Stern,
    LLP)
    Attorney for the proposed interveners

    ERIC J. NEMETH, ESQ. (Eric J. Nemeth, PC)
    Attorney for the proposed interveners

    NEIL D. MAROTTA, ESQ. (Marotta & Garvey)
    Attorney for the proposed interveners




                        Transcriber:  Andrea M. Sanniola
                        61 West 5th Street
                        Bayonne, New Jersey  07002
                        (917)846-4930
                        Digitally Recorded
                        Operator:  C. Ortiz

3

I N D E X

WITNESS                    DIRECT  CROSS  REDIRECT  RECROSS

ORDER TO SHOW CAUSE


ORAL ARGUMENT
By:  Mr. Reed    - 8/17/31
By:  Ms. Lustig  - 9/38
By:  Ms. Murray  - 11/27/37
By:  Mr. Nemeth  - 26/34
By:  Mr. Marotta - 35




COURT'S DECISION - 7/10/39

THE COURT:  On the record, please.  We're on the record in Docket Number 2449-24, the City of Jersey City and the Rent Leveling Board v. The Towers of Portside Urban Renewal Company.

Ladies and gentlemen, and Counsel, we are now on the record and Court Smart is currently running.  The Court Smart audio system is the official record of these proceedings.  Anybody who is joining us I will certainly welcome them to view these proceedings.  However, you must turn off any other cellphones or other electronic devices that you are not using to join and participate in the proceedings or view the proceedings today.  Our local rules do not permit the use of any electronic devices without permission for any purpose, including but not limited to recording, photographing, or videotaping, even in these virtual courtrooms, without permission.  Any person who does use an electronic device or uses it so without the prior permission of the Court will be subject to punishment.

Okay.  So, let us begin with the plaintiffs with their appearances.

MR. MURRAY:  Good morning, your Honor.  Brittany Murray, Acting Corporation Counsel, for plaintiff, City of Jersey City and the Jersey City Rent Leveling Board.

THE COURT:  Miss Murray, good morning.

And for the defendants.

MR. REED:  Good morning, your Honor, Derek Reed, Erhlich, Petriello, Gudin, Plaza & Reed on behalf of the defendants.

THE COURT:  Mr. Reed, good morning.

Again, ladies and gentlemen, please turn off -- okay.  If -- I have other individuals who are looking to join.  Give me a moment.  Okay.  Very good.

Okay.  Mr. Reed, thank you, very much.  And good morning, if I didn't say it already in the beginning.

Okay.  Ladies and gentlemen, again, please if you are not an attorney, and you are only here to view these proceedings, please turn your cameras off and mute yourselves.  I welcome your -- your presence, but with so many -- I can't see who is arguing when the cameras are on.  Okay.  Very good.

Okay.

MS. MASCHERIN:  Your Honor, also on behalf of the defendants Terrie Mascherin and Andrew Vail from (Indiscernible).  We have pending pro hac vice motions, your Honor.

THE COURT:  Thank you, very much.  May I ask you to just to please change your reflected name?  It

just is coming up as CH45O.

MS. MASCHERIN:  Yes.  Will do.

THE COURT:  Appreciate it.  Thank you, very much.

Mr. Reed -- oh, I'm sorry.  Miss Lustig.

MS. LUSTIG:  Good morning, your Honor.  Mollie Hartman Lustig for proposed interveners.  This -- the Portside Towers West Tenants Association, Portside Towers East Tenant Association, along with the four named individuals are the proposed interveners, and they're also represented by my co-Counsel Eric J. Nemeth and Neil Marotta, who are both on the link.

THE COURT:  Yep.  Mr. Marotta, good morning, and, Mr. Nemeth, good morning to you.

MR. MAROTTA:  Good morning.

MR. NEMETH:  Good morning, your Honor.

THE COURT:  I think we have all of the -- I just had TK's phone.  I'll ask to please turn off the camera, please.  Okay.  Very good.

Okay.  So the first order of business that we have is, Mr. Reed, I did get your e-mail about hearing the pro hac vice.  Okay.  Folks, if you have your cameras on and you're only joining these proceedings I'll ask you to please turn your cameras off.  You are certainly welcome to participate, but I need you to turn

your camera off for me and mute yourselves.  Okay.  The individual who is gen -- noted as TK's phone I ask, again, to turn off their camera.  Very good.  Okay. Thank you, very much.

Mr. Reed, back to our first order of business is the pro hac vice application.  I -- I do see that it was filed relatively recently.  But Mr. -- Miss Murray, Miss Lustig -- well, Miss Lustig, you're not into it yet so hold -- hold tight.  Miss Murray, do you have any objection to granting pro hac vice?

MR. MURRAY:  No, Judge.

THE COURT:  Okay.  That -- that application will be granted and I'll welcome Miss -- now, it's Mr. Vail and Miss Masachurin.

MS. MASCHERIN:  Mascherin, your Honor.

THE COURT:  Mascherin.  Thank you.  I'm sorry for mispronouncing your name.

MS. MASCHERIN:  It's close.

THE COURT:  Thank you, very much.  Okay.  That application will be granted.

MS. MASCHERIN:  Thank you, your Honor.

THE COURT:  Okay.  Very good.

All right.  So the next application that I'd like to hear is Miss Lustig's application for intervention.  I know it was filed yesterday or the day

before and I -- I haven't seen any opposition to it, nor would it be due.

So let me just ask this. Does anybody have any opposition to the requested intervention? Miss Murray, let me look to you, first.

MR. MURRAY: No, Judge.

THE COURT: Mr. Reed?

MR. REED: Judge, the tenants have also filed a motion to intervene in the federal action. We have not objected to that, though the City has objected. So it's our understanding that the tenants seek to intervene in this action to argue that this action should be dismissed in lieu of the pending federal action. And to the extent that is the case, we do not object to the tenants' motion to intervene.

If that is not the case we object because we do not believe this case should -- because we believe this case should be dismissed or stayed. Notably, Judge, the tenants filed a class action lawsuit in federal court just last week against our clients, which just yesterday was assigned to Judge Cox Arleo in the federal court, which is the same Judge who has been overseeing the related federal matters since November 2023. And we would expect those matters to be consolidated at some point.

THE COURT:  Okay.  Thank you, Mr. Reed, for bringing me up to speed to that.

Miss Lustig, we're kind of doing this in reverse order.

MS. LUSTIG:  Sure.

THE COURT:  But what is your position with regard -- I don't think Mr. Reed has an objection, as long as it's for that limited purpose, but --

MS. LUSTIG:  I --

THE COURT:  Yeah.

MS. LUSTIG:  Thank you, your Honor.

I understand Mr. Reed's position.  I think similar to Mr. Reed we did have the opportunity to review his papers.  We are arguing similar, that the first-filed rule applies here.

And then, of course, we have alternative argument as to why, you know, if the Court's going to entertain we would want to oppose, in some respects, the relief requested by the City.  So if Mr. Reed is okay with that it's sort of -- if you're going to hear it we would certainly like to be heard.  If you're not, then we agree that our primary argument is it doesn't belong before you, anyway.

THE COURT:  Okay.  Thank you, Miss Lustig.

Does the -- with regard to the application,

Mr. Reed, does that change your position?

MR. REED:  That does not change your position.

THE COURT:  Okay.  Miss Murray?

MR. MURRAY:  No, Judge.

THE COURT:  All right.  Very good.

The application will be granted.  I don't think there's any necessity to further hear additional argument on what is essentially a more procedural aspect to allow all those who wish to join to join.  The joinder rules are quite clear.  So I'm going to grant Miss Lustig's motion so she could be heard with regard to this.

Now, what we are here for today really is only on a very limited issue, and that was to provide all the parties for an opportunity to be heard with regard to the requested emergent restraints that were issued. Under the rule, as we all know, no restraints can be issued unless all parties are given an opportunity to be heard.

To provide additional time, I think it was at Mr. Reed's request, the matter was adjourned with -- for some time and I received a very comprehensive brief in support of this application.  And one of them is requesting a dismissal of the Complaint.

Miss Murray, I don't -- I know that your

office had provided a reply. However, the ultimate relief that is requested was outside of the scope of what this particular hearing was. It was only limited to, as I think we made clear, only to the issue with regard to limited restraints.

Miss Murray, are you prepared to go forward on the application seeking the dismissal of the Complaint, which is really what the defendants are arguing in this matter.

MR. MURRAY: Sure, your Honor. I'm able to go forward with that.

THE COURT: Okay. Well, this is the application of the State. If you wish to be heard with regard to the entirety of the relief I'll be happy -- happy to hear you. Miss Murray.

MR. MURRAY: Sure, your Honor. Thank you.

Good morning. As I previously indicated, I represent the City of Jersey City and the Jersey City Rent Leveling Board in this order to show cause and motion for preliminary injunctive relief. We do thank the Court and your Law Clerk for dealing with this. I do apologize for the filing being on a holiday week. That's just how it worked out.

THE COURT: It happens.

MR. MURRAY: So I do appreciate the Court and

all the parties working with us on that.

For background, your Honor, the motion stems for now over two years petitions, decisions, and lawsuits that have been filed related to the applicability of the City's rent control ordinance to the properties at 100 Warren and 155 Washington, e-mail there.  These are properties located within the City of Jersey City.  They're operated and owned by the defendants The Portside -- The Towers at Portside Urban Renewal, LLC and Equity Residential.

Pursuant to Jersey City's Municipal Code, specifically Chapter 260, the City maintains both the bureau of rent leveling, the head of which is the Rent Leveling Administrator and a local Rent Leveling Board, which consists of seven volunteer members.  The Bureau is responsible for enforcement of Chapter 260 and has the ability and the responsibility to accept petitions from both landlords and tenants (Indiscernible) to review and adjust rents in accordance with that Chapter and also the general enforcement.

As your Honor is well aware, this is our application for temporary restraints.  There are the Crowe v. DeGioia factors found at 90 N.J. 126 from 1982.

THE COURT:  Yeah.  Ladies and gentlemen, again, I'll ask you if you are please joining us please

Argument - Ms. Murray                          13

turn off your cameras and please mute yourselves.

Go ahead, Miss Murray.

MR. MURRAY:  Your Honor, so, very briefly, I'll go through the four factors that we need to establish in order to grant the finding of preliminary injunctive relief.  They are more fully set forth in our brief, but just to quickly address each factor.

The likelihood of success on the merits.  The case law below in the Court's decisions is well settled. The Portside Towers have operated as if it were exempt from rent control based upon the newly constructed multiple dwellings exemption in a was found in state law at N.J.S.A. 2A:42-84.1, and also adopted in our Municipal Code at 260-6c.  The notice requirements found in order to apprise yourself of that exemption are very strict and they are prerequisites, and unforgiving, in order to obtain the exemption.  And we did attach the Appellate Division decision in Willow Ridge Apartments, LLC v. Union City Rent Stabilization Board, which tracks this.  It is a case out of Hudson County, and held that if the notice requirements are not strictly followed there can be no exemption.  So the caselaw below is well settled.  Our Board made that finding that these buildings were not exempt from rent control, and that caselaw is well settled.

14

The irreparable harm that we allege is -- cannot be addressed by monetary damages. There's significant time and resources to handle these complaints. Your Honor, it is 527 apartments between the two buildings. So if we continue to receive complaints -- and, again, in our papers this is because we are receiving allegations that the rent is still being increased while our Board is continuing to recalculate the legal base rents. Without the legal base rents there can be no increases, even pursuant to our Chapter 260. There -- if you're still eligible from cost of living increases, but you must meet all the criteria found within the Chapter, the legal base rents being the starting point in order to attempt to get any increases.

Our Bureau is still recalculating these 527 units. So, at this time, any increases we do believe violate the ordinance because there is no legal base rent, so there should be no increases.

The backlog created by continuing to receive e-mails, complaints, updated documents, heavily burdens the office, the office that is meant to continue to serve 300,000 other residents, landlords, tenants alike. We have been assisted from another office, the Audit Department, in trying to get these recalculations in.

Argument - Ms. Murray                          15

The Court's decisions clear, the building is subject to rent control and rents must be recalculated. Anything going against that is a waste of time and resources that the City can otherwise expend.

The showing that on balance of harm that the harm to the moving party is greater than the harm to the party to be restrained.  Right now the defendants lose nothing if the Court grants this limited relief.  It is relief to stop them from increasing rents while the calculations continue.  Returning the affected tenants back to the rents that were charged at the time of the Board's ruling, which was in October of 2023.  The recalculations are underway, and as more fully set forth in our papers is not unreasonable to believe that these rents will be decreased as the building is going from exempt from rent control to subject to rent control.  So any changes further complicate that recalculation.

And, lastly, the public interest will not be harmed and actually favors injunctive relief.  Public interest here is clear.  The City must be able to enforce its local ordinances and the rulings of its bodies.  Our Rent Leveling Board made a decision.  They told the Rent Leveling Bureau to recalculate legal base rents and that the building is subject to rent control. We continue to receive leases that have an addendum that

say the buildings are exempt from rent control.

So the argument that the defendants are strictly following the Board's decision or the City's rent control ordinance, I believe, is -- is untrue based on the documents that were provided to us and provided to your Honor.

To respond to the arguments about the first-filed rule, we did reply and we do not believe that the first-filed rule prohibits your Honor from making a determination, again, in this limited scope. The rule is not inflexible in the presence of special equities, may lead a Court to disregard traditional deference (Indiscernible) the first-filed action here in -- in the United States District Court in New Jersey. There are significant state interests here.

This is a local rent control ordinance. This is state law, as your Honor has jurisdiction to hear the limited relief for preliminary injunctive relief to halt any rental increases while the recalculations are underway. The defendants will not incur any prejudice or hardship as a result. So we believe that your Honor can hear this motion and make a decision.

That's all I have at this moment, your Honor. If you have any questions --

THE COURT: Miss Murray, I don't have any

Argument - Mr. Reed                              17

questions.  But I'll, certainly, allow you to respond to anything that Mr. Reed or his colleagues wish to say.

Mr. Reed, in response.

MR. REED:  Thank you, your Honor.

Everything that Miss Murray -- all the facts that Miss Murray just recess -- recited to the Court have been squarely before the federal forum for seven months, Judge.  The same parts that are in this case have been engaged in litigation in the federal forum before Judge Cox Arleo since November of 2023.

The relief that Miss Murray is seeking here today could have and should have been applied for in the federal forum.  But it was not.  This case is ripe for dismissal or, at least, a stay based on New Jersey's well settled first-filed rule and principles of comity.

The -- the Court, which first applies jurisdiction, has precedence in the absence of special equities.  The City cannot meet this exception, Judge, which is fronted in our brief on Page 10.

Under the first-filed rule New Jersey rules ordinarily stay or dismiss the civil action in deference to an already pending substantially similar lawsuit in another State.  That's Rose v. Hassan, cited in our brief, Judge.  This includes a substantially similar lawsuit in federal court as we have here, Judge.

Argument - Mr. Reed                                   18

In Jones v. Education Testing Services, also cited in our brief, the Court opined that, "The filing of the first lawsuit in federal court, and not a state court, is 'a distinction without a difference.'"  The first-filed rule helps protect against forum shopping, waste of judicial sources, and inconsistent rulings or judgments, and preserves comity between the courts citing Legend Movie Posters Corp., v. Jerry Ohlinger's Movie Materials Store, in our brief, Judge.

Here, in this case Judge Cox Arleo has been assigned the federal action since November of 2023.  A case management conference has occurred in that case.  A joint scheduling order has been agreed to by all parties, including the City and entered by the Court.  We have engaged in significant discovery and exchange of ten's of thousands of documents, and there is a pending motion that we filed, Judge, for a preliminary injunction that is pending before Judge Cox Arleo regarding the same issues that Miss Murray is bringing before this Court here today.  It's the height of impropriety for the City's application -- for the City to bring this action before your Honor in an attempt to circumvent the federal forum and Judge Cox Arleo.

Imagine if the rules were reversed, Judge, and this case was pending before you and a party went to

another forum to seek the same relief in a different forum. What is the city attempting to do here but the very things the first-filed rule helps to protect, forum shopping, waste of judiciary sources, and inconsistent rulings.

The City could have filed a motion to dismiss the federal action in November 2023. It did not. It joined the issue and has been actively participating in that federal litigation. The City could have filed a cross motion to our motion for preliminary injunction seeking the same relief it's seeking here today. It did not. It filed opposition arguing -- arguing no emergency in opposition to our application for preliminary injunction. They're talking out of both sides of their mouth. The City could have, and still can, file its own motion for preliminary injunction in the federal forum. It has not.

The case plaintiffs rely on to support the special equities exception to the first-filed rule and principles of comity in their brief. And really the only case they -- they rely on, Judge, is Sensient Colors v. Allstate Insurance Company, which is misguided and distinguishable from the case at bar. In Sensient, Judge, the -- the insurer filed against the insured in New York State Court regarding a hazardous toxic waste

infestation in Camden County, New Jersey.  Two months after the New York case was filed the insured filed a claim in New Jersey State Court for declaratory judgement.  And the Supreme Court in that case held that there was a strong public policy for New Jersey to oversee litigation regarding contamination in its State, and that New Jersey was the best forum to resolve litigation regarding hazardous waste within its borders. It also noted -- the Court also noted, Judge, that a critical factor with the New Jersey action moving forward was "an actual conflict between the laws of New Jersey and the laws of New York" relative to the central issue in the case.

Finally, the Supreme Court found that relevant documents and witnesses were all in New Jersey, thereby supporting the forum non conveniens basis to permanent the second filed action to proceed.  None of these special equities are present in the subject action, Judge.  The case is pending in the District of New Jersey.  The -- the State law claims will be interpreted under New Jersey law.  And its right down the street from your courtroom, Judge.

As a result, this action must be dismissed or stayed and the first-filed action in federal court must proceed.  The federal action involves identical parties.

The identical parties in this case, Judge, are in federal court and have been there for seven months.  The facts and issues in the federal action are identical -- are identical to this action.  The City has joined the issue in federal court and entered into the discovery order, engaged in ten's of thousands of pages of documents exchanged so far.

Portside, again, its filed its motion for preliminary injunction seeking an order to maintain the status quo, including establish the rents at the subject buildings, which has been fully briefed by the parties and remains pending.  The federal court will apply New Jersey law to the State law claims, and there is no forum non conveniens as the case is also pending in New Jersey.  And as the Jones court found, Judge, the federal court is a distinction without a difference relative to state court.

Your Honor --

THE COURT:  Mr. (Indiscernible).  I'm sorry.  Go ahead.

MR. REED:  Sorry, Judge.

THE COURT:  No.  No.  If I interrupted I apologize.  Go ahead.  Were you finished?

MR. REED:  Beyond that here in propriety of this state court action given pending federal court

action the City's demand for injunctive relief fails to meet the very high standards for such extraordinary relief.  There is no irreparable harm.  The alleged damage is monetary, which the City even states in its application by stating, quote -- I'm reading from the City's application here.  "The City should not have to bear the cost of the defendant's noncompliance with the ruling of the Rent Leveling Board."

The City also argues, as its other factor -- other basis for irreparable harm, that it will suffer irreparable harm because other landlords are not following the law, which is pure conjecture.  That is not a basis for irreparable harm.  And there is no emergency.  The City has not argued any fact or circumstance that qualifies an emergency warranting injunctive relief.

Indeed, the federal action was filed in November 2023, and the City filed its responsive pleading in December 2023.  Sitting on its hands for seven months does not support any argument of an emergency.  And, indeed, they argued -- the City argues the opposite in opposing our motion for preliminary injunction in the federal forum.

Portside has operated the building, which is rent controlled, since November 3rd, 2023.  In this

respect, Portside has only issued rent increases in line with the rent increases (Indiscernible) Jersey City rent control ordinance, which is CPI, consumer price index or 4 percent, whichever is less, and any increase that was initially given since November 3rd, 2023, in excess of those limitations has been reduced or credited. Portside has acted in good faith in an attempt to navigate this very difficult period of time, to operate under rent control, while the City continues to do the recalculations of rent, as directed by the Board in its November 3rd, 2023, decision. Again, seven months ago.

In attempting to operate the buildings in the context of the pending litigation and while awaiting the recalculation of the rents to find out what the rents are, even though we don't agree with it what the rents are, Portside has relied in good faith on the representations of Corporation Counsel on the record at City Council meetings, which include, Judge, on January 10th, 2024, "Corporation Counsel stated on the record, the building is subject to rent control. So if something is over four percent they need to file an illegal rent petition." When the Corporation Counsel is asked by Council President Waterman about rent increase at Portside Corporation Counsel stated, "They can receive a rent increase as long as not above four

percent."

Again, in -- as recently as June 12th, 2024, Corporation Counsel was asked about -- in complaints about illegal rents and stating, "Right.  And we still -- that's where the recalculations come in once we have the recalculated number.  Also we would know if they are increased but there is a motion pending in federal court, a motion pending dealing with this.  If they do have allegations of illegal rent they have to submit it to the Director Richardson.  They have an attorney that has contacted the Director and they need to continue to do that and submit any underlying paperwork they have."

Moments later Corporation Counsel stated -- Judge, moments later, "We don't have the rent calculations, Councilman.  We don't have the new rent calculations.  So the Board's decision is not yet complete until we have those rent calculations.  Until we have the rent calculations those are the new legal rents.  There is a motion pending right now dealing with whether or not the landlord can continue to collect the rents it has right now, but that is something pending before the Federal District Court right now."

And, again, as recently as June 26th, 2024 in response to a tenant asking about receiving rent

overpayments Corporation Counsel states, "We're not going to be able to answer that.  There are two lawsuits and I expect two more after the recalculations come out. I'm not -- we're not -- the people can't give back to them.  There is no way to tell."

Portside has committed and continues to commit to operate the building subject to rent control with a full reservation of rights and has sought the very same relief the City seeks in this action, a preliminary injunction in the federal forum, which has been fully briefed by the parties in Williams and even before Judge Cox Arleo.

Judge, in summation, this Court must follow New Jersey's first-filed rule and the principles of comity and give way to the federal forum where these very same parties and issues have been pending for the past seven months.  Portside respectfully requests the subject action be dismissed or at the very least stayed while the federal action remains pending.

Notwithstanding, even if this Court declines to recognize the well settled first-filed rule in comity the City has failed to meet its burden to support the entry of the extraordinary relief of injunctive relief. There is no emergency and there is no irreparable harm. And Portside respectfully requests the City's request

Argument - Mr. Nemeth                           26

for injunctive relief be denied.

Judge, if you have any questions I'd be happy to --

THE COURT:  I don't, Mr. Reed.  Thank you, very much.

Miss Lustig.

MS. LUSTIG:  Mr. Nemeth is going to take this one.

THE COURT:  Mr. Nemeth.

MR. NEMETH:  Yes.  Yes, your Honor.  Good morning.

THE COURT:  Good morning.

MR. NEMETH:  I just wanna say that although we have our differences with Portside, as Mr. Reed has pointed out, in this instance we support his argument about the first-filed rule and, unfortunately, we think this Court doesn't have jurisdiction.

However, should this Court disagree with us and decide to retain jurisdiction we would like to be heard on the temporary restraints --

THE COURT:  Sure.

MR. NEMETH:  -- and the terms thereof.

THE COURT:  I would be happy to hear you, sir.

MR. NEMETH:  Okay.

So one of our main concerns is, as you can

see, the -- the interests of the City and the tenants diverge at a certain point.  The role of the City was to protect those rights for decades.  They failed to do so. If it wasn't for the substantial efforts of the tenants and the tenants' associations we wouldn't be in front of your Honor today.

But one of the key points we're trying to address, that we think is not properly addressed, is the status quo period.  Our position is it is the date that just predates when the parties were aware that there was a dispute about rents that should be in effect.  And right now the City is taking a position that that is in 2023, October 19th, to be certain.  Our position that that date should be January of 2022.  So should there be temporary restraints as to when the operative rents are in place that would be the date.

THE COURT:  Thank you, Mr. Nemeth.

MR. NEMETH:  Thank you, your Honor.

THE COURT:  Miss Murray, anything in response to Mr. Reed and Mr. Nemeth?

MR. MURRAY:  Sure, Judge.

Just to respond briefly about the comments made at Council meetings.  I do want to say the January 10th comments are taken out of context.  I was having a back and forth with the Council President and even

though we do advise that we don't speak about pending litigations sometimes that is not the reality of what happens at the meetings.  I was speaking generally about the cap allowed for the rental increases.

There was additional communication that Mr. Reed did not mention that Director Richardson sent out on -- at the very latest, on March 19th of 2024.  It was made clear that because there was no legal base rent there could be no possibility for increases.  And that was also reiterated by our Counsel at the time.  The City had outside Counsel for a few months.  And then on April 17th, he also reiterated that that was the City's position that there was no legal base rents for any increases to -- to stem from.

Again, there are some back and forth about when the City was able to bring and file this motion. It wasn't until June 28th of this year that we began receiving copies of 2023 leases and 2024 leases that showed that there was still, despite the landlord's contention that they were maintaining and abiding by our rent control ordinance, there is still an addendum contained in the leases that we received again, only on June 28th of this year, that said that the building was still exempt from rent control.  And it specifically cited Jersey City's rent control, as well as increases.

This was the first time that we saw that there were actually increases being given in the rental leases to the tenants.  This was the first time we could move for this relief because this was the first time we had been given proof that the Board's order was specifically not being followed on two respects.

1.  We told them, again, in the letter of March 19 from Director Richardson, whose job it is to enforce the order and to ticket, I don't have a ticket book, Director Richardson has that ability and he's the Rent Leveling Administrator, and he is the person who sets the rents and enforces the Chapter.

At that point in time, it wasn't until June 28th that we began to receive the actual proofs.  And that's why we made this motion, Judge, because it was the first time that we had proofs that our Board's order was not being enforced on two respects.  The reason why we are making it in state court, and we feel there are special equities, is there was no stay of our Board's order.  I know there is a motion for preliminary injunctive relief in the federal courts.  There was no stay.  This order needs to continue to be enforced, and we received evidence that it was not being enforced.

This Court has the ability to hear it.  It is a local Board, it is municipal action in the normal

course.  These are appeal in an action in lieu of prerogative writ.  As your Honor is well aware, an action in lieu of prerogative writ was filed by the tenants in this case.  And then the -- it has not moved since the filing of an answer.  But, your Honor does have jurisdiction to hear this matter, to grant this temporary relief, to stay any rent, to return the tenants to where they were in October 2023, when the Board's decision came down, until the rental -- the recalculations are completed.  And then I expect we're gonna be back somewhere dealing with that.

And just to respond briefly, the cost associated with it they're not monetary costs.  The cost of the time and resources that the City must expend if -- which are emergent, and ongoing, and continuing to this day, and it would be detrimental to the office if we have to continue to receive leases, and complaints, and e-mails in violation of our Municipal Court's order.

So that would be my response, your Honor.  Thank you.

THE COURT:  Miss Murray, thank you, very much.

Mr. Reed, the -- the relief, as I perceive it to be from -- from what Miss Murray is arguing about and which she's already articulated, appears to mirror that in the federal litigation.  I acknowledge that she did

not bring -- that Corporation Counsel did not bring the application in the -- in the federal jurisdiction.  But what -- I ask, just most directly, what would be the harm in granting the limited form of relief that is -- as she notes, prohibiting any entry into any lease agreement for any tenants of 100 Warren and 155 Washington while recalculation of the base rents occurs.

MR. REED:  Well, Judge, it would fly in the face of the first-filed rule.

THE COURT:  Aside from the first-filed rule, yeah.

MR. REED:  That issue is directly before the federal court.  We're asking the federal court -- we're asking the court in federal court the exact same thing, what are the rents?  What can we charge here?  We want to have a status quo order to set the baseline so everyone knows during the pendency of that action who can charge what.  That issue is squarely before the federal forum at this time.  Miss Murray, all the -- all the issues --

THE COURT:  Well, no.  Sorry to interrupt, but maybe I'm misunderstanding.  But it sounds like the affirmative relief that the defendants in this matter are looking for in the federal litigation is to calculate those rents.  I think what Miss Murray is

asking is just for a cessation of any issue regardless of what the rents are.

Miss Murray, am I -- am I correct in that?

MR. MURRAY:  Yes, your Honor, any increase.

THE COURT:  Yeah.  And then -- so there is a difference in -- as I understand in -- for what you have just said, Mr. Reed, that you're asking for a calculation of the rents before the federal -- no?  Did I misunderstand?

MR. REED:  Yes, Judge.

THE COURT:  Okay.

MR. REED:  I'm sorry if there was a misunderstanding there.

We're asking for the status quo order.  We're asking for the Court to allow us to charge the rents that are in our lease.  That is the status quo, to charge the rents that are in our lease while this case is pending with a full reservation of rights.  We've proposed a -- a list of -- of relief to the federal court that addresses this very issue.

So if this Court were to rule on this very issue it would be stepping on the toes of the federal court.  But that motion has been fully briefed by the City, by our client, and is currently pending before Judge Cox Arleo because that would upset the status quo

of the rents.  That's what we're asking the Court to do.

Miss Murray is free to file a cross motion. She didn't.  She's free now to file this very motion before the federal court and ask for emergent relief to Judge Cox Arleo so we can have all these issues joined in the very same forum, heard by the very same Judge, do not have inconsistent rulings, and we can all move forward in that forum.  And that's why -- that's the very premise of the first-filed rule, Judge.  That's the very premise of principles of comity is to have all of this heard in the first-filed forum.  And that's where everybody is right now.

Judge, again, the tenants filed a lawsuit just last week against my clients that has been assigned to the very same Judge.  The tenants intervening in this case have opposed this Court ruling on this and want to hear this in federal court, the tenants, the folks who are paying the rents here.  We -- the landlord wants to have this case decided in federal court.  And we would -- we would say, based upon all of those factors, this Court should decline to rule on this particular case and allow this matter to be heard by Judge Cox Arleo with everything pending before her.  Again, the motions pending before her.  And, Miss Murray, if she so chooses, can take this very same motion and file that

before Judge Cox Arleo and maybe we could have it all heard together so we can make our arguments as to what all of us believe the rents should be during the status quo order.

THE COURT:  Mr. Reed, thank you, very much.

Mr. Nemeth.

MR. NEMETH:  Yes, your Honor.

I just wanted to at that, as Mr. Reed has explained and as your Honor is aware, we're in District Court.  We've been attempting to join the action, federal action, and but for the refusal of the City to agree that we could join as interveners in that action we would be actively in that case.  And why that is relevant to this point is that when we -- with our application pending we filed an order to show cause seeking the same relief that's before your Honor today. But, again, because the City refused to agree, and notwithstanding the fact that Portside had agreed to us to be allowed as interveners the City refused to do it. Our order to show cause was dismissed without prejudice with the right to re-file.  But I just raise that because it is evidence, and I support Mr. Reed on this point, that all of this relief could be heard by the federal court and could have been heard months ago, had our order to show caused been -- been heard and we've

been accepted as interveners.

So I just wanted to clarify, your Honor, that this -- all of these issues are and could be presently before the District Court.

THE COURT: Mr. Nemeth, thank you, very much.

MR. MAROTTA: Your Honor, if I may?

THE COURT: Mr. Marotta.

MR. MAROTTA: Thank you, your Honor.

Your Honor, the -- going back to the status quo, we have an obvious difference of opinion on that. I believe the law is pretty clear that the status quo goes to the time prior to the start of the litigation. Litigation started in this matter when the tenants filed their illegal rent petitions back -- the first petition filed May 31, 2022. I refer to the case Subcarrier Communication, Inc. V. Day, 299 N.J. Super. 634, at 639.

So we believe that the status quo was at that point and that -- although we do not agree, obviously, that those rents are accurate or correct, the status quo should be at that point.

One of the main reasons for intervention is the fact that the City has not adequately protected our interests. They -- they are correct. We cannot increase a rent without knowing what the basis. Therefore, any increase on that is going to be

inaccurate. So, for that reason alone -- however, the ordinance, itself, prohibits increases in rents.

Mr. Reed mentions that his client has acted in good faith. However, they have failed to follow any of the required ordinance preconditions to an increase since 1998. They were required to file rent rolls. The ordinance requires that all rent rolls be filed on the official forms of the City. They have failed to do that. They have given partial rent rolls that this -- that do not provide the information necessary for the City to actually conduct or the tenants to conduct an analysis. They have failed to abide by the truth and lending statement portion landlord identity statement. It is required to be placed in a conspicuous place. That has never been done. It is required to be provided to the tenants. That has never been done. They -- the property owner is required to let the new tenant know the name and the rent of the prior tenant. None of that has been done, Judge. They have not done it.

So it's our concern that if the status quo is not rolled back to January 2022, or a status quo, at all, they will continue increasing rents that are not permissible and ought to be a breach of the ordinance, itself.

So, again, if the City had acquiesced in our

intervention we probably wouldn't be here.  And we should be in federal court.  But if this Court is going to rule on this matter the status quo should go to 22, and the tenants be protected in that manner pending the matter continuing in the federal court.

THE COURT:  Mr. Marotta.  Thank you, very much.

Miss Murray?

MR. MURRAY:  Yes, Judge.  Just very briefly to address the intervention.

What the parties are leaving out is that there is still a prerogative writ action that was filed by the tenants in state court.  So at the time that they made the application to intervene there was -- there was already a pending lawsuit filed by the tenants against the City in the state court.  So the City, up until about an hour ago, was the only party that was a defendant in the multiple lawsuits.  So the tenants had filed that action in lieu of prerogative writ against the City, and then the landlord had filed the federal lawsuit against the City, as well.  The tenants moved to intervene.  They were a plaintiff in one action and moved to intervene as a defendant in the other action.  So there still are two pending lawsuits with the tenants.  Another motion to intervene is still pending,

but I do just want to place that on the record because we are leaving that out, that there is still a pending action in state court that has not gone anywhere, but it is still active on the Court's docket.

MS. LUSTIG:  Your Honor, if I may briefly just touch on that?

THE COURT:  Miss Lustig.

MS. LUSTIG:  The initial -- I think Mr. Reed discussed this sort of procedural goings on that have occurred in the federal litigation involving Counsel who was initially assigned to represent this matter, Mr. Bernstein, not -- no longer being appointed by the City to represent the City's interest in that federal litigation.

Unfortunately, ourselves and Portside staff had multiple meeting confers in trying to work through some of these issues.  Mr. Bernstein had opposed our intervention initially.  And while -- and so he was not a part of those meet and confers, despite us requesting his presence.  And one of the things we were discussing between the parties was the withdrawal of that State prerogative writ because, again, it did not include all the parties and we were already off to the races in federal court.  So we figured it would really be a no brainer.  We had productive discussions, but,

unfortunately, at that time the City was not a part of them and that's -- that's, you know, clearly not Miss Murray or present Counsel, but that's a more accurate version of events.  So it was always the intention that that State prerogative writ would be dismissed pending the federal court picking up the bulk of the litigation.

THE COURT:  Miss Lustig, thank you very much.  Let me just go around the room.  Mr. Nemeth, anything further?

MR. NEMETH:  No, your Honor.  I'm fine.

THE COURT:  Mr. Reed?

MR. REED:  Nothing further, Judge.

THE COURT:  Mr. Marotta?

MR. MAROTTA:  Nothing further, your Honor.

THE COURT:  Miss Murray?

MR. MURRAY:  No, Judge.  Thank you.

THE COURT:  I haven't heard from pro hac vice Counsel.  Is there anything you want to say?

MS. MASCHERIN:  Your Honor, I believe Mr. Reed has covered everything.  Thank you.

THE COURT:  Thank you, very much.

This matter comes before the Court on a temporary restraints issue of the plaintiff's order to show cause.  The defendant has opposed substantively and has asked for a dismissal of the Complaint alleging that

this Court lacks jurisdiction to hear this matter. Although the matter, as I indicated in my preliminary remarks, was only scheduled for the application that the City made as to emergent temporary restraints.  The City has indicated that it was prepared to go forward and address directly Mr. Reed's application that he makes on behalf of the defendants joined by the interveners, the permitted interveners, to dismiss this matter.

I am going to -- since there has been consent provided by the City and they have made an argument in opposition to Mr. Reed's request that he makes in his opposition to the City's order to show cause I'm going to resolve everything at one time.

The genesis of this litigation is the Rent Leveling Board's November 2023 -- 2023 ruling.  That ruling found that the defendants, property owners, failed to comply with N.J.S.A. 2A:42-84.4 and was, therefore, not entitled to a 30-year exemption of the rent -- of rent control and was ordered to recalculate the rents for a period of six years for 527 units.

As a result of this ruling, the defendants filed a lawsuit in the Federal District Court of the District of New Jersey against Jersey City, as well as the Rent Leveling Board.  Despite the pending federal litigation the plaintiffs filed this matter with an

order to show cause in June of 2024.

The plaintiff's argue that temporary restraints are appropriate because they meet the Crowe factors. The plaintiffs also note that they're likely to succeed on the merits because the defendants violate and have violated rent control ordinances. The plaintiffs also note that it has already suffered and will continue to suffer irreparable harm because the City has expended exceptional period of time and resources in responding to the violation allegations, and also working to recalculate the rent for the 527 units.

The plaintiffs also argue that if the defendants continue to be noncompliant it may lead similar property owners to believe that they may also not have to comply with those ordinances. The plaintiffs maintain that they will suffer more harm than the defendants if the temporary restraints were not granted because they will have to expend more resources to cure the defendants' violations.

Finally, the plaintiffs contend that the public interest weighs in favor of temporary restraints because the defendants must follow the law and the plaintiffs have only limited resources to combat their noncompliance.

The defendants set forth two reasons for this Court to deny the relief requested.

First, the defendants note that the parties have an already case pending in Federal District Court, and in that matter Portside is the plaintiff. The case also has been fully briefed and also has -- is pending the argument with regard to or decision, I guess -- well, maybe not a decision, but certainly argument with regard to a preliminary injunction that the defendants have brought.

Second. The defendants argue that there is no emergency, nor is there any irreparable harm that would warrant a temporary restraining order. The defendants note that as part of the pending preliminary injunction they propose the status quo framework that they have voluntarily implemented. The implementation includes a commitment to maintain the rent at the rent control levels and also to cap any increases at the statutorily provided four percent. The defendants also maintain that they can and will put in a refund mechanism if the Board's order is upheld.

Because of these actions the defendants argue there's no emergency that would require this Court to grant the temporary restraints. The defendants also maintain that if the plaintiffs seek any additional

interim relief they can do so in federal -- in the federal litigation.

In its reply the plaintiffs assert that the first-filed rule does not preclude this Court from hearing the case because there are special equities to consider. The plaintiffs argue that the relief sought in the Hudson case is different than the federal case because the Hudson case only seeks to restrain the defendants from increasing the rent until the base rent is determined and -- excuse me -- returning the residents rent rates to October 19th, 2023. The plaintiffs also note that the defendants are sending out lease and collecting increased rent amounts despite their statements to the contrary. The plaintiffs also note that the defendants cannot raise the rent by the allowable four percent because there's no base rent to calculate the four percent increase from. The threshold issue for this Court to address is whether the Hudson County or the Hudson Vicinage has jurisdiction over a matter that is simultaneously pending in federal court, and the Court will note an identical issue pending in federal court.

This Court finds that it does not have jurisdiction. New Jersey courts have long held that the Court first acquiring jurisdiction has precedence absent

special equities, Bass Ex Rel. Will of Bass v. Devink, 336 New Jersey Super. 450, 455 (Appellate Division 2001).  This principle reflects this State's strong public policy in favor of marshalling judicial sources and this State's desire to respect our sister States. Bass, 336 New Jersey Super., at 455.  Because of this there is ordinarily no reason to entertain subsequent local litigation paralleling an already instituted action.  Bass, 336 New Jersey Super., at 456, citing Cogan Technologies v. Boyce Engineering International, Incorporated, 241 New Jersey Super. 268, 273 (Appellate Division 1990).  Therefore, a Court in this State will rarely entertain the prospect of duplicitous litigation.

To determine if the pending litigation in New Jersey is duplicative of the litigation in federal court this Court must determine if the defendant has proven three things.

Number 1.  That there's a first-filed action in another State.

2.  That both cases involve the same parties, the same claims, and the same legal issues.

And, 3.  Whether the plaintiff will have an opportunity for adequate relief in the prior jurisdiction.  American Home Products v. Adriatic Insurance Company, 286 New Jersey 24, 37 (Appellate

Division 1995).

Here, the defendants have met their burden, this Court finds. First, there is an existing pending lawsuit in federal court. That lawsuit was filed in November of 2023 in the District of New Jersey several months before the filing of this action.

Second. The cases involved the same parties, the same claims, and the same legal issues. The federal case involves the same parties in this case, but they are taking different positions. The cases involve, however, largely similar claims. There are six Counts pending in federal court and the Counts alleged that the Board's decision of the Jersey City ordinance violates the takings clause in both the federal and State Constitutions, the due process clauses, the contract clauses, and the ordinances violate State law -- there's a State law violation. There's also a statutory violation and preemption, and also asserts a claim in lieu of prerogative writs.

The Hudson County Complaint has one Count which seeks summary relief and alleges that Portside has violated Chapter 260 of the rent control ordinance by sending out rent increase notifications despite the Board's November decision. These claims, this Court finds, go hand in hand. Any decision rendered by the

federal court will certainly affect the outcome of the State litigation. The legal issues underpinning the federal case will also effect the Counts plead in the State's case.

Third. The plaintiffs have an adequate opportunity for relief in federal court. The plaintiffs can raise a counterclaim against Portside in the federal matter that would encompass the Count plead by its Complaint here. The plaintiffs are not prevented from doing that. Further, the plaintiffs here have a better opportunity to seek relief in federal court before a Court that already has the case and has already heard a motion very similar to the one before this Court.

If a defendant meets their burden the burden then shifts to the plaintiff to demonstrate that there are efficient compelling special equities that exist to allow the action to proceed in the second filed State. Special equities are broad and are certainly fact specific, and they can include the fact of prompt determination in the first-filed State or first-filed jurisdiction. See Gosschalk v. Gosschalk, 48 New Jersey Super. 566 (Appellate Division 1958). That regarded a foreign divorce suit that was pending for four years. It can also exist where there is a significant connection to New Jersey. American Home Products v.

*Adriatic Insurance Company*, 286 New Jersey Super. 24, 28 (Appellate Division 1995).

The Court may also consider whether exercising jurisdiction would in any way thwart the public policy of New Jersey. *American Home Products Corporation*, 286 New Jersey Super., at 28. If there are special equities supporting jurisdiction in another State the trial court should then balance them with -- against each other when deciding whether to exercise jurisdiction. *American Home Products*, at 286 New Jersey Super., at 39-40.

Here, the plaintiffs argue that special equities weigh in favor of this Court maintaining jurisdiction. Those special equities, as they argue, the lack of prejudice to the defendants if this Court rules, the City's familiarity with its own rent leveling ordinances, and the City's interest in protecting its tenants. This Court is not convinced that those special equities are sufficient to warrant this Court in exercising jurisdiction while there is an already pending federal case. In fact, it would -- this Court finds it would prejudice the defendants if this Court were to enter an order granting temporary restraints that may very well run afoul of a federal order. The defendants would then be stuck between two court orders both enforceable but may be inapposite. This Court does

not doubt that the City's interest in protecting its tenants and its familiarity with its own guidelines, but the City is not precluded from protecting its tenants by defending its position in federal court.  The City's expertise is not ignored simply because the case is pending in federal court rather than in state court.

The question now becomes whether the plaintiffs have met their burden under Crowe v. DeGioia.  As we know, Crowe v. DeGioia, a seminal case having to do with preliminary injunctive relief requires a showing of four specific prongs.  I will not recite those prongs, as they're well-known to all the parties.  The Crowe factors must be demonstrated, however, by clear and convincing evidence.  That is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  In re Samay, 166 New Jersey 25, 30 (2001).  Citing In Re:  Boardwalk Regency Company, 180 New Jersey Super, 324, 339 (Appellate Division 1981).

This Court finds that the plaintiffs have not proved irreparable harm by clear and convincing evidence.  A plaintiff suffers an irreparable injury when there's no adequate remedy available at law.  Subcarrier Communications, Incorporated v. Day, 299 New Jersey Super, 634, 637 (Appellate Division 1997.)  If

the harm alleged can be adequately addressed by monetary damages then harm is not considered to be irreparable under the law. Crowe, 90 New Jersey at 132. Here, the plaintiffs have claim -- have failed to prove -- excuse me -- imminent and irreparable harm by the pertinent clear and convincing standard.

The plaintiffs characterize its harm as the increase in its workload due to the defendants violation or alleged violation of the Board's order. While the increased workload and communications are attributed to the defense existing and alleged ongoing violations, ultimately recalculating and enforcing the guidelines is within the plaintiff's job responsibilities. This Court bears in mind that while the plaintiffs take issue with the influx of discovery due to the number of related cases their decision to file this matter also attributes to their increased workload.

The plaintiffs also note that the time spent on this rent increase issue takes time away from other residents, as they have not provided proof to support this claim. The plaintiffs further allege that irreparable harm will occur because the defendants' noncompliance will influence similar landlords into noncompliance. Again, this is an unsupported allegation of a hypothetical harm that this Court finds does not

rise to the level of proof necessary to meet the Crowe factors.

More importantly, the defendants have negated the risk of future harm by voluntarily deciding that it would not raise future rent for the residents of 100 Warren Street from the amount in the rent control ordinance as of September 19th, 2022, and would also not raise the rent and the 155 Washington Street residence beyond the rate established.  The defendants further decided not to increase the rent beyond the four percent allowed for rent control properties.  Even if their calculations were noted to be wrong the defendants have also employed, and adopted, and supported a mechanism to refund any tenants that may overpay.  The defendant's conduct, while not due to a court order, certainly gives the plaintiffs the majority of the relief that they ultimately seek.

Secondly, legal rights underlying this case are not well settled.  A preliminary injunction is withheld when the legal right underlying the movant's claim may be unsettled.  Crowe, 90 New Jersey at 133.  A Court cannot grant preliminary injunctive relief unless the material facts are uncontroverted and the moving party demonstrates a probability of eventual success on the merits.

Here, the second and third Crowe factors are not met. The constitutionality of the Board's order is squarely at issue in the federal case. If the Federal Court finds that the order violates the Federal and State Constitutions that decision will affect this case's outcome. While the plaintiffs point this Court to the Willow Ridge Apartments decision to support its argument that the Board's arguments have lost both at the trial and appellate level, this Court also recognizes that that case is an unpublished decision and cannot be relied upon by this Court as well established principles. The defendants are not bringing those same arguments in state court, but have instead filed their own cause in federal court. This Court does not know how the federal court will rule and this Court cannot confidently say that the law is, therefore, well settled while there is litigation pending that increases -- that it would indicate, otherwise, and certainly not by the clear and convincing standard that would control this application.

The balancing of the hardships does not weigh in the plaintiff's favor. Injunctive relief should only be granted when the balancing of the relative hardships weighs in favor of an injunction, because denying the requested relief would result in an even greater harm to

the moving party.  Crowe, 90 New Jersey, at 132-133.

Here, this Court does not agree that the plaintiffs are likely to suffer more harm in the absence of temporary restraints than the defendants would.  But this point is essentially moot, as the defendants have indicated that they are not currently raising rents and will not do so until the federal litigation ends.  The defendants actions, this Court finds, have eliminated the risk that any irreparable harm may result to plaintiffs and is certainly instructive to this Court in finding that the City has not met the fourth prong.

For these reasons, therefore, the plaintiff's motion will be denied.  The order to show cause will be dismissed.  And the matter will be dismissed without prejudice.

Miss Murray, looking to you, Ma'am, is there anything further?

MR. MURRAY:  No.  Thank you, Judge.

THE COURT:  Thank you.  Mr. Nemeth?

MR. NEMETH:  No, your Honor.  Thank you.

THE COURT:  Mr. Reed?

MR. REED:  Nothing further, Judge.

THE COURT:  Mr. Marotta?

MR. MAROTTA:  Your Honor, just we would like to just (Indiscernible), we would like to have a quick

call with Mr. Reed and with Miss Murray.  And I'm just mentioning it on the screen so if that's possible we can have that done.

THE COURT:  That's something you could do off the Zoom call, absolutely.

MR. MAROTTA:  Exactly.

THE COURT:  And, Miss Lustig, anything further?

MS. LUSTIG:  Nothing here.  Thank you.

THE COURT:  Thank you, very much.  The Court will follow with an order in very short course.

Ladies and gentlemen who have joined these proceedings today thank you all very much.  Counsel, thank you.  And that concludes the proceedings and we'll terminate the call.  Thank you, all.

MR. REED:  Thanks, your Honor.

MR. NEMETH:  Thanks, Judge.

MS. MURRAY:  Thank you, Judge.

MS. LUSTIG:  Thank you.

THE COURT:  Ellen, we can go off the record.

(Matter concluded.)

54

C E R T I F I C A T I O N

I, Andrea M. Sanniola, the assigned transcriber, do hereby certify the foregoing transcript of proceedings index number from 9:04:34 to 10:04:02, is prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings as recorded.

/s/ Andrea M. Sanniola                        635
_____        _____
Andrea M. Sanniola                      AOC Number

                                                7-20-24
                                        _____
                                        Date